AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

**FILED**

**Oct 19, 2021**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.   2:21-mj-0165 KJN |
| Alberto Arriaga VELAZQUEZ | ) | |
| | ) | |
| | ) | **SEALED** |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___October 13, 2021___ in the county of ___Sacramento___ in the
___Eastern___ District of ___California___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See attached affidavit of DEA Special Agent James Bonanno

☑ Continued on the attached sheet.

/s/ James Bonnano
_____
*Complainant's signature*

James Bonnano, DEA Special Agent
_____
*Printed name and title*

Sworn to me and signed telephonically.

Date: ___October 19, 2021___

_____
*Judge's signature*

City and state: ___Sacramento, California___

Hon. Kendall J. Newman, U.S. Magistrate Judge
_____
*Printed name and title*

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent James Bonanno of the DEA, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), Sacramento District Office, and have been so employed since 2018. I am responsible for conducting investigations into narcotics traffickers and assisting in their apprehension. These investigations are conducted both in an undercover and overt capacity and involve electronic surveillance, cellphone-location evidence, confidential informants, and the execution of search and arrest warrants. Upon being hired by DEA, I completed a four-month DEA Basic Agent School at Quantico, Virginia. After completing DEA Basic Agent School, I reported to my current assignment at the Sacramento District Office, Enforcement Group 2.

2. I was trained as a DEA Special Agent at the DEA Academy, Quantico, Virginia. During my training, I received special training in the Controlled Substances Act, Title 21 United States Code, including but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I have received special training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine base, heroin, marijuana, MDMA, and other dangerous drugs prohibited by law. I received further training in search and seizure law, financial investigations and money laundering techniques, and many other facets of drug law enforcement. I have also spoken to and worked with experienced federal, state, and municipal agents and narcotics officers regarding the methods and means employed by drug manufacturers and drug traffickers, including the use of express carriers and the U.S. Postal system to distribute drugs.

3. During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations. I have participated in executing numerous Federal and State search warrants involving the aforementioned controlled substances, the seizure of narcotics-related records and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, and various types of infiltration, including undercover agents, informants, and cooperating sources. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I am familiar with the methods used by drug traffickers to smuggle and safeguard

1

controlled substances, to distribute, manufacture, and transport controlled substances, and to collect and launder related proceeds.

4. This Affidavit is submitted in support of a Criminal Complaint charging Alberto Arriaga VELAZQUEZ with possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II Controlled Substance in violation of 21 U.S.C. § 841(a)(1).

5. The following facts establish the grounds of the issuance of a criminal complaint and arrest warrant. I have set forth only the facts that I believe are necessary and pertinent to establish the appropriate foundation of probable cause for the authorization of a criminal complaint. I have not purposely omitted any fact(s) that the court might find relevant or necessary in concluding probable cause exists.

## **PROBABLE CAUSE**

6. On September 29, 2021, the Honorable Judge Deborah Barnes authorized a search warrant (2:21-sw-00766-DB) for Alberto Arriaga VELAZQUEZ's person, his vehicles, and his residence in North Highlands, California (hereinafter "the residence").

7. On October 13, 2021, agents initiated surveillance on the residence and observed two vehicles in the driveway. One vehicle was a silver 2002 Mercedes sedan with CA license plate 6GCJ708, registered to Francisco Lopez in Sacramento, CA. The second vehicle was a 2007 white Cadillac Escalade SUV with CA license plate 8KCX294, registered to Alberto A. Velazquez at the residence.

8. At approximately 8:40 a.m., I saw a male juvenile and VELAZQUEZ leave the residence in the silver Mercedes and requested that Sacramento County Sheriff's Department deputies conduct a vehicle stop on VELAZQUEZ. Deputies conducted the stop shortly thereafter, and VELAZQUEZ complied with their directive to exit the vehicle. VELAZQUEZ was detained, handcuffed, and placed into the deputies' marked police vehicle.

9. I then identified myself to VELAZQUEZ as a DEA Special Agent and read him his Miranda rights. VELAZQUEZ then waived his rights and agreed to speak with me. I informed VELAZQUEZ that I had a federal search warrant for the residence, his vehicles, and his person. After explaining this, I asked VELAZQUEZ if he would prefer officers use a key to open the residence. VELAZQUEZ indicated he would prefer that officers use a key to open the door, and told me that the key to the residence was attached to the key fob of the silver Mercedes. I then transported the

2

key to the residence while the deputies transported VELAZQUEZ there in their police vehicle.

10. At approximately 9:24 a.m., agents executed the search warrant at the residence.  I used the key that was in VELAZQUEZ's possession to open the security gate and front door of the residence.  No other person was found at the residence.

11.  Agents began searching the residence while I continued my interview of VELAZQUEZ, which was recorded.  I read VELAZQUEZ his Miranda rights, which he again waived and agreed to speak with me. VELAZQUEZ then admitted to me and DEA SA Brian Nehring that he had approximately four pounds of crystal methamphetamine in the garage of the residence.  He stated he manages a crew of labor workers and sells drugs to these workers, as they are methamphetamine users.

12. Independent of the interview, agents had searched the garage.  During this search, FBI SA Victoria Anderson found a green bag located behind a slab of granite.  Within the green bag, SA Anderson found a small digital scale and four clear plastic Ziploc style bags, each containing a crystal-like substance of suspected crystal methamphetamine.  In total, the gross weight of the suspected crystal methamphetamine was 2,193.8 grams.  I am aware from my training and experience that this amount of methamphetamine is inconsistent with personal use, and therefore I believe that VELAZQUEZ possessed this suspected methamphetamine with intent to distribute it to others.

13. Agents later field tested the suspected crystal methamphetamine and it tested presumptively positive for methamphetamine.  The suspected crystal methamphetamine is currently awaiting analysis at DEA Laboratory; however, based on my training and experience, the crystal-like substance that field tested positive for methamphetamine bears the same likeness and appearance as the crystal methamphetamine that I have seen in other investigations.

## REQUEST FOR SEALING

14. VELAZQUEZ is currently out of custody and unaware of the federal charges proposed in this affidavit.  The United States believes that public disclosure of the Criminal Complaint or this Affidavit could cause VELAZQUEZ to flee or destroy additional potential evidence.  He could obstruct justice by instructing others to destroy evidence or to lie to law enforcement officers.  He could also retaliate against people who he suspects have cooperated with this investigation.  Therefore, I respectfully request that the Criminal Complaint and this Affidavit be sealed until further order of the Court.

## **CONCLUSION**

15. Based upon the foregoing, I believe that Alberto Arriaga VELAZQUEZ did possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).  I therefore request that a Criminal Complaint and Arrest Warrant be issued for Alberto Arriaga VELAZQUEZ.

    I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.


     /s/ James Bonanno
    _____
    James Bonanno, Special Agent
    Drug Enforcement Administration



    Sworn to and subscribed before
    me telephonically on the __19__ day of October 2021.


    KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE


    Approved as to form:

    Alstyn Bennett
    Assistant U.S. Attorney

4